# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIPPO CORPORATION/INTERNATIONAL BRIDGE CORPORATION, | )<br>)<br>) |
| Plaintiff/Counterdefendant, | )<br>) |
| v. | ) CIVIL ACTION<br>) NO. 09-cv-0956 |
| AMEC EARTH & ENVIRONMENTAL, INC. | )<br>)<br>) |
| Defendant/Counterclaimant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                    **March 30, 2011**

This matter involves claims and counterclaims arising from a construction subcontract between Plaintiff Nippo Corporation/International Bridge Corporation ("the Joint Venture") and Defendant and Counterclaimant AMEC Earth and Environmental, Inc. ("AMEC"). Before the Court is a motion by AMEC to strike portions of a declaration by the Joint Venture's asphalt expert Richard Root [doc. no. 90]. Additional motions for partial summary judgment are also pending before this Court. For the reasons that follow, the Court will grant AMEC's motion to strike.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In November 2003, AMEC entered into a prime contract with the United States government through the Air Force Center for Engineering and the Environment for various construction projections, including work at the Andersen Air Force Base in Guam.[1] On

---

[1] Defendant and Counterclaimant AMEC's Statement of Material Facts Not in Dispute ("AMEC SOMF") ¶ 1; Pl.'s Statement of Material Facts ("JV SOMF") ¶ 1.

September 27, 2004, the Air Force issued Task Order 0013, which included demolition, removal and replacement of the north runway at Andersen (the "Project").[2] In April 2005, following a competitive bidding process, AMEC awarded the Joint Venture a subcontract to carry out the Project for a fixed price of $21,293,061.[3] The Project involved removal of the existing asphalt runways and their replacement with portland cement concrete pavement, installation of asphalt at taxiway tie-ins, runway shoulders and overruns, and removal and reinstallation of runway lighting fixtures.[4] Due to a series of problems with availability the materials required for the project, the subcontract's specifications, and installation and completion of the Project's various components, the initial scheduled completion date of April 26, 2006 was extended to June 29, 2006, and the project was ultimately completed ten months later on May 31, 2007.[5] The Parties dispute which Party bears the fault for the problems that led to delays, whether the corrective action required by AMEC was economically wasteful, and whether the Joint Venture may recover resultant delay and other damages.

The Joint Venture alleges seven counts of breach of contract, each involving a different and specific aspect of the Project, and an eighth count for consequential damages. Count 2 of the Complaint arises from the subcontract's hot mixed asphalt ("HMA") specifications, which the Joint Venture alleges were defective. Specifically, the Joint Venture claims that the requirement

---

[2] AMEC SOMF ¶¶ 4–5; JV SOMF ¶ 2.

[3] AMEC SOMF ¶ 16; JV SOMF ¶ 3.

[4] AMEC SOMF ¶ 5; Compl. ¶¶ 21.

[5] AMEC SOMF ¶ 17; Compl. ¶¶ 7, 52–53.

that the HMA meet a 13% "voids in mineral aggregate"[6] ("VMA") standard was impossible to satisfy using locally available aggregate, and that the standard was unnecessary in a tropical environment.[7] Count 7 seeks equitable adjustment of the fixed price contract to account for compensable performance delays and to adjust the term of the subcontract for excusable delays for which AMEC is allegedly improperly assessing $837,500 in liquidated damages, or $2,500 per day of work required beyond the extended completion date.[8] A portion of Claim 7 involves delays resulting from the allegedly defective HMA specifications. The Joint Venture asserts total losses associated with the claims in an amount nearly equal to the initial subcontract price—more than $17 million.[9] Of that amount, the Joint Venture attributes at least $1.7 million in damages due to purportedly defective HMA specifications and related damages.[10]

AMEC has filed counterclaims seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that AMEC is entitled to deduct

---

[6] A voids-in-mineral-aggregate ("VMA") standard sets the minimum level of voids permitted in an asphalt mix between the aggregate. The VMA "describes that portion of the space in a compacted HMA pavement or specimen which is not occupied by the aggregate"—that is, the area occupied by air and asphalt not absorbed by the mineral aggregate. See Prithvi S. Kandhal, Evaluation of Voids in the Mineral Aggregate for HMA Paving Mixtures, Nat'l Ctr. for Asphalt Tech., Auburn Univ., NCAT Report No. 96-4, at 1 (1996). The purpose of the VMA specification for the Project was to ensure that there was sufficient asphalt between the aggregate in the mix to hold the aggregate together so that it would not break off and pose a hazard to the aircraft using the runway. AMEC SOMF ¶¶ 57–59; Rosenfield Decl. in Opp'n to AMEC's Mot. for Summ. J., Ex. 60, Expert Report on Hot Mix Asphalt Pavement by Richard E. Root at 7–8.

[7] Compl. ¶¶ 21–32, 65–70; JV SOMF ¶¶ 13–17, 84–106.

[8] Compl. ¶¶ 95–98; Am. Counterclaim ¶ 9.

[9] JV SOMF ¶ 2 (alleging damages of $17 million); Compl. at 15–16 (seeking damages of no less than $18.6 million total).

[10] Compl. at 15.

$837,500 in liquidated damages from any amounts owed to the Joint Venture.[11] AMEC also seeks attorneys' fees and expenses associated with defending against the Joint Venture's allegedly false and overstated claims, including demands for payment by the Air Force.[12]

This Court's December 14, 2009 and March 24, 2010 case management orders set the discovery deadlines in this case: (1) fact discovery closed on February 16, 2010, and the Joint Venture was required to serve its affirmative expert reports by that date; (2) AMEC was required to serve its expert reports, including rebuttal reports, by March 29, 2010; (3) all expert depositions were to be completed by May 21, 2010; and (4) dispositive motions were to be filed by May 28, 2010.[13]

On February 15, 2010, the Joint Venture served its asphalt expert Richard E. Root's report regarding the HMA aspect of the subcontract.[14] In that report, Root opined that it was impossible to meet the allegedly excessive voids-in-mineral-aggregate standard set forth in the subcontract's specifications by using only aggregate available on Guam.[15] He also asserted that no project on Guam had ever met that standard.[16] On March 29, 2010, AMEC served the report

---

[11] Am. Counterclaim ¶¶ 9–18. This Court previously dismissed AMEC's counterclaim for liquidated damages, finding it had improperly pleaded a claim for declaratory relief but providing leave to amend. See Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Counterclaims, July 22, 2009 [doc. no. 40]. AMEC subsequently amended its counterclaim seeking the declaratory judgment.

[12] Am. Counterclaim ¶¶ 19–26.

[13] See Case Management Orders, Dec. 14, 2009 [doc. no. 65], March 25, 2010 [doc. no. 72]. The dispositive motions deadline was later extended to June 11, 2010. Order, Apr. 30, 2010 [doc. no. 76].

[14] See Decl. of Richard E. Root in Opp'n to AMEC's Mot. to Strike ("Root Decl. in Opp'n to Mot. to Strike") [doc. no. 93-1] at ¶¶ 4–5.

[15] Root Decl. in Opp'n to Mot. to Strike ¶ 6; Rosenfield Decl. in Opp'n to Mot. to Strike, Ex. A, Expert Report on Hot Mixed Asphalt Pavement, Richard Root (Feb. 15, 2010).

[16] Root Decl. in Opp'n to Mot. to Strike ¶ 6.

of its expert, M.W. Witzcak, which did not address any of Root's assertions regarding impossibility.[17] On April 13, 2010, AMEC deposed fact witness William Toelkes, the President of International Bridge Corporation ("IBC"), a member of the Joint Venture.[18] During that deposition, Toelkes testified that IBC had met the same VMA standard in a prior housing construction project on Guam by using only locally available aggregate.[19] On April 28, 2010, Root submitted his report in rebuttal to the Witzcak expert report.[20] Root's rebuttal report did not address Toelkes's testimony regarding purportedly compliant HMA using only local aggregate or any other issues regarding whether meeting the VMA standard was possible.[21] This is because, according to Root, Toelkes's testimony did not change Root's view that no previous project had met the HMA requirement, and none of AMEC's experts rebutted or contradicted Root's opinions as to impossibility or indicated they intended to rely on Toelkes's testimony at trial.[22] Root was deposed on May 12, 2010, and during that deposition testified, consistent with this initial report, that no contractor in Guam has ever met the VMA requirements.[23] During the deposition, Root was questioned by AMEC regarding Toelkes's assertion that IBC had met the

---

[17] Plaintiff's Mem. in Opp'n to AMEC's Mot. to Strike ("JV Resp. in Opp'n to Mot. to Strike") at 2–3; Root Decl. in Opp'n to Mot. to Strike ¶¶ 7–8.

[18] Def./Counterclaimant's Mot. to Strike Decl. of Richard Root ("AMEC Mot. to Strike") ¶ 5 & Ex. A, Toelkes Dep.

[19] AMEC Mot. to Strike, Ex. A, Toelkes Dep. 21:11–21.

[20] JV Resp. in Opp'n to Mot. to Strike ¶ 7.

[21] Root Decl. in Opp'n to Mot. to Strike ¶ 10.

[22] Root Decl. in Opp'n to Mot. to Strike ¶ 10, 13.

[23] JV Resp. in Opp'n to Mot. to Strike ¶ 11.

VMA requirement.[24]

On June 11, 2010, three weeks after the close of all expert discovery, AMEC filed a motion for partial summary judgment [doc. no. 80]. In that motion, AMEC seeks partial summary judgment as to the HMA claim and the portion of Count 7 that was attributable to delays resulting from the difficulties in designing a compliant asphalt mix.[25] AMEC asserts that undisputed facts show that the Joint Venture could have designed compliant HMA, but failed to do so and thus breached the contract, rendering its claims for damages associated with the HMA meritless.[26] The Joint Venture responded that it was not responsible for the failure to produce a compliant HMA because it was impossible to meet AMEC's VMA specification using only local aggregate.[27] The challenged Root declaration, dated July 1, 2010, was included as an exhibit to the Joint Venture's response in opposition to AMEC's motion for summary judgment as to the HMA claim as evidence in support of the Joint Venture's contention of impossibility.[28]

In the challenged declaration, Root reiterated that AMEC's HMA specifications "simply could not be met using aggregate that is locally available on Guam," that the "VMA requirement is not necessary or helpful in a tropical location such as Guam," and that he was "unaware of any HMA work on Guam that has ever met the HMA specifications AMEC selected for the

---

[24] JV Resp. in Opp'n to Mot. to Strike ¶ 14; AMEC Mot. to Strike, Ex. B., Root Dep. 107:21–110:12.

[25] AMEC's motion as to the HMA claim is offered in the alternative to AMEC's motion for summary judgment on grounds that the Joint Venture's claims are barred because it did not comply with the subcontract's notice provisions.

[26] Def./Counterclaimant's Mot. for Partial Summ. J. ("AMEC Mot. for Summ. J.") [doc. no. 80] at 4.

[27] See Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. ("JV Resp. in Opp'n to Summ. J.") at 14–16.

[28] See JV Resp. in Opp'n to Summ. J., Decl. of Richard E. Root ("Root Decl. in Opp'n to Summ. J.") [doc. no. 87-5].

Project."[29] Root also asserted that Toelkes's belief that IBC had previously met the same VMA specification for the housing project was mistaken because it was based on a flawed report by Geo-Engineering. Geo-Engineering tested the HMA mix for the housing project.[30] Root's declaration stated:

> While Mr. Toelkes of IBC now apparently claims to have developed an HMA mix design that would have met AMEC's specifications for the Project, Mr. Toelkes' claim is based upon an erroneous report from Geo Engineering. I have obtained a copy of the test results from Geo Engineering purporting to show that IBC had met the Project's HMA specifications on subsequent work IBC performed for a housing project. The Geo Engineering test results upon which Mr. Toelkes relied incorporates [sic] incorrect data. In order to measure VMA, test samples have to be measured against data from the aggregate that was used to make the HMA. Geo Engineering used data from the wrong aggregate—i.e. aggregate other than the aggregate that was being tested. Even putting aside Geo Engineering's calculation error, two of the three reported VMA values for the housing subdivision fail to meet the VMA requirements for the North Runway project, and the one value that appears to meet the VMA requirement has a very low asphalt content and high air void value, which renders the VMA result invalid.[31]

It is unclear from the record when the Joint Venture and Root received the data from Geo Engineering on which Root relied in his summary judgment declaration. An e-mail between the Parties indicates that AMEC obtained the data on March 11, 2010, informed the Joint Venture that same day that it had the data, and offered to produce it to the Joint Venture.[32] But Root stated during his May 12 deposition that those data had not yet been produced though he had requested them soon after learning of the Toelkes deposition.[33]

---

[29] Root Decl. in Opp'n to Summ. J. ¶¶ 7, 10, 15.

[30] See Root Decl. in Opp'n to Summ. J. ¶ 27.

[31] Root Decl. in Opp'n to Summ. J. ¶ 27.

[32] Rosenfield Decl. in Opp'n to Mot. to Strike, Ex. C.

[33] AMEC Mot. to Strike, Ex. B, Root Dep. 110:11–20.

-7-

AMEC moves to strike the "untimely and new opinions and analyses" in Root's summary judgment declaration and all references and assertions based on that declaration included in the Joint Venture's responsive papers, declarations, exhibits and statement of material facts.[34] AMEC argues that Root's analysis of the Geo Engineering data relating to IBC's prior HMA mix constitutes new analyses and conclusions not previously disclosed to AMEC in either of Root's expert reports or to this Court prior to the close of expert discovery. AMEC also asserts that the Joint Venture has not produced the test data referenced in the Root Declaration or other documentation related to Root's opinion as to the accuracy of Toelkes's statement and the Geo Engineering report. Further, AMEC asserts that because Root was aware of Toelkes's assertions regarding the purportedly compliant HMA mix during Root's own deposition nearly two months before his summary judgment declaration, the challenged portions of that declaration cannot be justified on grounds that it responds to new facts or information offered in AMEC's motion for partial summary judgment.

The Joint Venture counters that Root's summary judgment declaration as to the Geo Engineering data is neither untimely nor new because Root had previously opined in his affirmative expert report that no prior project on Guam had ever met the VMA specifications.[35] Further, the Joint Venture asserts Root could not address the accuracy of Geo Engineering's report in his rebuttal report because none of AMEC's experts addressed that issue or disagreed with Root's assessment that meeting the VMA standard in Guam was impossible in their own affirmative or rebuttal reports. Finally, the Joint Venture argues that Root's opinion

---

[34] AMEC Mot. to Strike at 1.

[35] JV Resp. in Opp'n to Mot. to Strike at 1.

-8-

contradicting Toelkes's conclusion was permissible because AMEC had never disclosed its intent to rely on the Toelkes deposition testimony on this question.

## II. DISCUSSION

Under Rule 26(a)(2), parties must disclose the identity of expert witnesses who may testify at trial and accompany that disclosure with a written report prepared by the witness which includes "a complete statement of all opinions the witness will express and the basis and reasons for them; the data or other information considered by the witness in forming them;[36] any exhibits that will be used to summarize or support them," as well as additional information about the witness's qualifications, prior expert testimony and compensation received in the relevant case.[37] The parties must make these disclosures according to deadlines set in any case management or other order issued by the court.[38] Absent specific deadlines, these disclosures must be made at least 90 days prior to trial and, for expert testimony used solely to rebut another party's expert testimony on the same subject matter, within 30 days of the other party's expert disclosure.[39] Rebuttal reports may not be used to contradict or rebut fact witnesses.[40] Parties also have a duty to timely supplement their expert disclosures when they are incorrect or incomplete if the additional information has not otherwise been made known to the other parties in the case.[41] For

---

[36] The amendments to the Federal Rules of Civil Procedure, effective December 1, 2010, now require that the written report include only "the facts or data considered by the witness in forming [opinions]."

[37] Fed. R. Civ. P. 26(a)(2)(B).

[38] Id. 26(a)(2)(D).

[39] Id.

[40] Id. 26(a)(2)(D)(ii).

[41] Id. 26(a)(2)(E) & 26(e).

experts, the duty to supplement applies to both the expert's report and opinions given during deposition testimony.[42] Supplemental reports must be disclosed by the time a party's pre-trial disclosures are due.[43]

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, any party that "fails to provide information . . . as required by Rule 26(a) or 26(e)(1) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." The party that failed to make the required disclosure bears the burden of establishing substantial justification and harmlessness.[44] This rule is "designed to provide a strong inducement for disclosure of Rule 26(a) material."[45]

This Court has substantial discretion in determining whether to exclude evidence or testimony not previously disclosed as required under Rule 26.[46] That discretion is guided by several factors: "1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence . . . ."[47]

---

[42] Fed. R. Civ. P. 26(e)(2).

[43] Id.

[44] M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., No. 97-1568, 2007 WL 979854, at *12 (D.N.J. Mar. 30, 2007).

[45] Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995).

[46] See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (court's decision to exclude evidence will not be disturbed absence abuse of discretion).

[47] B. Braun Melsungen AG v. Terumo Med. Corp., No. 09-347 2010 WL 4438041, at *9 (D. Del. Oct. 28, 2010) (citing Konstantopoulos, 112 F.3d at 719); see also In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999) (factors include: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified,

The Court finds that Root's summary judgment declaration improperly offered a new expert opinion and analysis not previously disclosed in any prior report, in violation of the Joint Venture's obligations under Rule 26 of the Federal Rules of Civil Procedure and in contravention of this Court's case management orders.

First, Root's opinion offered in his summary judgment declaration as to whether IBC had previously met the 13% VMA requirement is a new opinion based on new data and new analysis to which AMEC is entitled to an opportunity to respond. The Joint Venture's assertion that the opinion is not "new" because Root had previously opined that no prior project on Guam had ever met the VMA specification using local aggregate is unpersuasive. Certainly the two opinions cover the same *general* subject matter, but Root did not merely expand on his general opinion, he offered a new opinion regarding a specific project on Guam based on a specific report and its underlying engineering data that were neither mentioned nor considered in his affirmative or rebuttal reports. Similarly, that Root in his deposition testimony may have disagreed with Toelkes's statement does not grant the Joint Venture license to rebut Toelkes by declaration at summary judgment based on analysis of data Root concedes he did not have at the time he was deposed; Root cannot expand on an opinion or analyses that were never offered or considered during his deposition. Thus, Root's summary judgment opinion is clearly untimely: the Joint Venture never submitted a supplemental report within the case management deadlines nor sought leave to supplement Root's February 15 report after the close of expert discovery on May 21,

---

(2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order"); In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 506 (D.N.J. 2005) (citing Newman, 60 F.3d at 156); Smith v. United States, No. 02-264, 2004 WL 1879212, at *7 (W.D. Pa. June 30, 2004) (declining to strike affidavits where they have not prejudiced Defendant because they are "unavailing for purposes of deciding Defendant's motion for partial summary judgment").

despite its knowledge well before the date of Toelkes's opinion, the Geo Engineering report, and availability of the data on which the Geo Engineering report was based.[48]

Analyzing the factors relevant to a motion to strike evidence or testimony that fails to comply with the disclosure requirements under Rule 26(a) and (e), this Court finds that striking the Root summary judgment opinion and references to it in related summary judgment papers is warranted. First, the information withheld here is important to the question of whether meeting the VMA requirement using locally available aggregate was possible—a question that goes not only to the Joint Venture's claim that the contract assumed use of local aggregate but also to its claims of economic waste. Second, AMEC is prejudiced by the Joint Venture's failure to supplement Root's report prior to the close of expert discovery in that it was deprived of the opportunity to depose Root about his opinion regarding the purportedly flawed Geo Engineering report and to rebut that opinion. The third factor—the likelihood of disruption of the trial—is not relevant at this stage where a pre-trial order has not yet been entered. And recognizing that striking evidence at any stage of the litigation is a severe sanction, the Court addresses the fourth factor—the ability to cure the prejudice—by developing a procedure to cure the prejudice at both the summary judgment and trial stage.

The fifth factor—the explanation for the failure to disclose—also weighs in favor of

---

[48] The opinion could not have been included in Root's initial expert report because it was submitted before either Party had access to the Geo Engineering data and was due well before Toelkes was deposed. And Root could not have included this opinion in his rebuttal report. Rule 26(a)(2)(D) (formerly rule 26(a)(2)(C)) permits an expert to submit a rebuttal report within 30 days of the date on which the opinion to which the expert is responding was submitted, regardless of court ordered deadlines. But the rebuttal report is limited to responding to the opinions and reports of other experts, not those of lay witnesses. Toelkes was a fact witness. Even if Root were permitted to rebut this type of fact witness testimony (that which relied on an expert report), Root's declaration would still be untimely as it was offered long after Toelkes was deposed. Thus, the Joint Venture should have sought leave to submit a supplemental expert report.

striking the declaration at this stage. The Joint Venture has not offered a plausible explanation for its failure to supplement Root's report prior to the close of expert discovery given that it apparently possessed the Eco Engineering data at that time and was aware of Toelkes's testimony. That none of AMEC's experts opined about the possibility of producing a compliant HMA mix using solely local aggregate or contradicted Root's expert opinion on impossibility does not vitiate the Joint Venture's responsibility to supplement its own expert's opinions when necessary. Nor does AMEC's failure to disclose its intent to use Toelkes's testimony in its summary judgment motion or at trial excuse the Joint Venture's shortcomings. That Toelkes's statement cut against the Joint Venture's impossibility argument was clear, and the Joint Venture could reasonably surmise that evidence would be used at both the summary judgment and trial stages. The Joint Venture has not met its burden to demonstrate that its failure to disclose Root's opinion prior to his summary judgment declaration was substantially justified.

Finally, the Court finds that the Joint Venture's failure to comply with this Court's case management orders and Rule 26 was willful. While the Court finds insufficient evidence of bad faith, the Joint Venture does not contend that the failure was the result of inadvertence or mistake.[49] It simply contends, without authority, that disclosure prior to submission of that declaration was not required since Root had previously opined that no project on Guam had met the VMA requirement and that Root's opinions on impossibility had not been challenged. The

---

[49] See Huertas v. U.S. Dept. of Educ., No. 10-3386, 2010 WL 5065224, at *2 (3d Cir. Dec. 13, 2010) (affirming Rule 37 sanctions based on district court's determination that party acted "willfully and not merely negligently or inadvertently"); Sullivan v. Glock, Inc., 175 F.R.D. 497, 507 (D. Md. 1997) (court should consider whether "failure to provide appropriate disclosures was willful or in bad faith as opposed to inadvertent or [due to] inexperience"); In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 72 (D.V.I. 1995) (considering whether noncompliance was "the result of inadvertence or mere oversight" or instead "intentional and in bad-faith").

Court thus finds the non-disclosure to be willful.

Accordingly, the Court finds that the Joint Venture has failed to meet its burden to show that its failure to comply with the disclosure requirements of Rule 26 was substantially justified and harmless. The appropriate sanction for the Joint Venture's failure to disclose the Root opinion prior to the motion for summary judgment is to strike Root's opinions in the declaration as to the accuracy of both the Geo Engineering report on the IBC's prior asphalt project and Toelkes's testimony based on that report, as well as references to that declaration in the Joint Venture's responsive papers, exhibits and statements of material facts.

Having ruled that AMEC's motion will be granted, the Court nevertheless has an interest in deciding summary judgment on a complete evidentiary record. To reduce unfair prejudice to either Party, the Court will also provide, as a further sanction, a procedure to cure the Joint Venture's deficient disclosures prior to deciding the pending motions for partial summary judgment. First, the Court will grant leave to the Joint Venture to properly move to submit a supplemental expert report by Richard Root that complies with the requirements of Rule 26(a)(2) and (e) within fourteen days of the date of the Order accompanying this Memorandum. Second, if the Joint Venture so moves and the Court grants such a motion, the expert discovery period will re-open for a period of sixty days during which time: (1) the Joint Venture may produce and serve Root's supplemental report; (2) AMEC may, if it desires, depose Richard Root; (3) AMEC may, if it desires, submit a rebuttal report to Root's supplemental report; and (4) the Joint Venture may depose the expert rebutting Root's report. Following closure of this discovery period, the Parties will be permitted to submit supplemental briefing, along with appropriate exhibits and declarations, as to AMEC's motion for partial summary judgment regarding the

HMA claims only (Count 2 and portions of Count 7 related to delays associated with the HMA aspects of the Project).

The Court will reserve ruling on imposition of additional sanctions, such as an assessment of fees and costs. For the purposes of judicial economy, the pending motions for partial summary judgment will be stayed and considered together with any renewed, fully supplemented, and briefed summary judgment motion as to the HMA claim.

An appropriate Order follows.